Please, the Court, my name is Mark Caldwell. I'm here this morning representing Ms. Hawke in this Social Security case. As a preliminary matter, with the Court's permission, I would like to reserve two minutes of my time for rebuttal, if possible. The Court is familiar with the facts of this case. This is a case where the district court remanded the matter for further administrative proceedings. In most cases, that's considered a favorable outcome. In this case, it is not a favorable outcome. The issue is whether the district court abused its discretion by remanding for further proceedings. I think it's important to understand that the standard of abuse of discretion encompasses an error of law. And so that's really the issue. On the threshold issue, there are two subsidiary issues, which are the ALJ's findings, on the claimant's credibility and reliance on nonexamining State agency physicians. That would be reviewed under the de novo standard. Ms. Hawke's case has become stronger since the briefs were filed in this case by virtue of two cases issued by this Court, Moza and Beneke, both of which I filed a Rule 28 letter recently giving those supplemental citations. In Moza, this Court remanded for payment of benefits based on vocational expert testimony that credited the claimant's subjective pain testimony. This case is even stronger than Moza because here the ALJ herself said that if the claimant's testimony were accepted, a finding of disability would necessarily flow from that because a person so limited could not sustain work activity. You know, in a related area, this is a class of cases that come to us after agency, administrative agency screening, in a related area, immigration. The Supreme Court has made clear to us that whatever we find in terms of legal or even factual error with what went on before the ALJ, they're called IJs in the immigration context, that ordinarily we should remand to the agency to let it apply its regulations and apply its expertise and come to, hopefully, the proper conclusion. Why shouldn't we do that here? And isn't that what Judge Rosenblatt did? It's what he did. The question is whether it's right. I think you're probably referring to the next one. I guess my question is what's wrong with that? The short answer is Social Security cases are different. I think you're referring to the Ventura case when you're talking about the Supreme Court. Okay. Well, this Court looked at the Ventura case in Hay v. Ashcroft, which I make some reference to in my briefs, and distinguished it. In Hay, they said, you know, the only issue was whether the claimant was credible and the agency shouldn't have a chance to again prove that Mr. Hay wasn't credible any more than had it been the other way around. He should get a remand to prove that he was credible again. But I think the real answer to your question is Social Security cases are different. And Congress said they were different when it passed the judicial review statute at 42 U.S.C. 405G, which specifically authorized courts to do exactly what the Supreme Court in Ventura said was abnormal. 405G gives the district court the power to remand a case with or without an instruction for further proceedings. So Congress specifically recognized Social Security cases are different. And that's the answer to your question. There were other issues, by the way, in Ventura that were different, just to briefly mention them. One, the language in Ventura specifically said that remand for further proceedings was appropriate, and I'm quoting verbatim, in the immigration context. So that's one thing. The other thing is there was an unresolved issue in Ventura that specifically had to be resolved. And that certainly isn't the case that we have here. Here, the administrative law judge said claimant's testimony or the treating physician's opinion lead to a finding of disability. So that is where I think we're dealing with a considerably different area of the law and considerably different facts. Speaking of the facts, I think it's a question of the nuance in how you interpret the ALJ's language. As I understand, your premise for the credit as true application is the statement made during the hearing to the effect of, well, if I accept the doctor's testimony, then she can't seem to do anything. However, that was not reflected in the written opinion. And in the written opinion, what remains at issue is not only her credibility, but her own description of what she could and couldn't do. So I guess I'm having some trouble reconciling that. It seemed to me that in effect what the ALJ was saying is like, you know, according to him, she can't do anything. But that doesn't mean, of course, that you don't also weigh the nonmedical evidence. And it seems to me that's why the remand is appropriate. I appreciate your comments on that. Sure. Let me point out exactly what she said so we're clear on this. And I'll just quote from what she said at ER11. If I accept his assessment, there would be no work that could be sustained. Sustained. That's the key. That's the key issue. Correct. Okay. And I didn't say she couldn't do anything, that she couldn't sustain work activity on a regular and continuing basis. So I guess, you know, to kind of dovetail with what Judge Hawkins was asking about in terms of the Ventura case, you know, in this case, this Court said this in the Beneke case last August, you know, remanding so that they get another crack at this creates an unfair heads-we-win, tails-let's-play-again system of disability adjudication. And that's what this Court in Beneke said wasn't fair. And again, I think it addresses what Judge Hawkins was asking me about in terms of why are Social Security cases different. The seminal case on this whole issue, as you well know, is the Varney case. I think it was in 1988. And the Varney case went to give a considerable discussion of why these cases are different and why accrediting as true doctrine is important. I pointed out in my brief another case that I had before this case, this Court back in 1995, the Burns case, which remanded for further administrative proceedings. And Jimmy Burns died before an administrative decision was made. He was my client. And that's a reason why Social Security cases are different as well. So to look at the Beneke case, which I think is the most important one on this issue, the most recent one, there the Court said that what we have here is our limitations that are facially inconsistent with the ability to sustain work. What makes this case even stronger than that is the ALJ's admission. So the question becomes, if this isn't a case for utilizing accrediting as true doctrine, I really can't think of one that is, given what the ALJ had to say. May I? Roberts. You're at about 2.20. Did you want to reserve some time? I was going to say, can I reserve my time? Thank you for your argument. Thank you. We'll hear from the Commissioner at this time. Good morning, Your Honors. Good morning. Catherine Liu appearing on behalf of the Commissioner. Speak right up. Sure. Thank you. An administrative court's decision in this case should be affirmed because remand for further proceedings is consistent when there are unresolved issues in a case. What's unresolved? Well, the doctor's opinion for one thing is unresolved. It's unresolved on two points I would raise. One is the district court took issue with the ALJ's interpretation of the word stable. And Dr. Cuomo called Klayman's condition, her Sjogren's Syndrome as being stable, beginning in August of 99. Now, the interesting thing is Sjogren's Syndrome is a progressive disease, and she's had this for a number of years. August of 99 was also the first time she ever reported fatigue to Dr. Cuomo. So she reported fatigue in August of 99. Three months later, in November of 99, there's no report of fatigue, but he calls it stable again. So on remand, the ALJ could discredit the treating physician's opinion for reasons Let me finish. Okay. Sorry. My question. For reasons other than those found improper by the district court? Well, I think just for clarification. Can I have a yes or no? Yes. Yes. Isn't that a great reason to grant benefits now? Well, no. I think there's other reasons to remand besides that, Your Honor. One of the other reasons to remand is because of the onset date. Klayman alleged an onset date of January of 97. Now, when the onset date is supported by the medical evidence and the facts in the record, then we go with what the Klayman said. But in this case, her doctor, even Dr. Cuomo, didn't say she was unable to work until April of 99, two years after that. Also, she continued to work. She was working part-time, and although it's not for a substantial gainful activity, she was still working. So what's the relevance then? The relevance is that the onset date has to be established by the evidence in the record. And if it's not, it has to be sent back under Armstrong and under our ruling in 8320 for the ALJ to make a medical inference with the use of a medical advisor. If we do remand it, can we instruct the ALJ what she may consider and what she may not? Of course. So we could limit it to simply determining the onset date? Well, with the assistance of a medical advisor, yes. And the treating physician's opinion? Of course. Okay. So in other words, if it were to be a direction from the Ninth Circuit that benefits be awarded, you're saying the only remaining issue is the onset date? Or do you think there's other issues? Well, I think there's other issues, too, but the onset date is critical here because payment of benefits can't be established, can't be given until the onset date is established. If we remand, as you suggested, would the ALJ be free to say, I can't determine an onset date, therefore no disability? No, he cannot do that. He has to determine an onset date. She has to. Excuse me, she. If it goes back to the same ALJ, yes. But she would, she or the ALJ that it's set back to. Unless we direct otherwise. Yes, Your Honor. Okay. But there's other reasons also. Dr. Cuomo's opinion in April of 99 was a conclusory opinion. It's not based on any contemporaneous medical records at that time. Claim that saw Dr. Cuomo in August of 98 and didn't see him again until, excuse me, in April of 98 and didn't see him again until August of 99. That's a 16-month window. Yet Dr. Cuomo provided an opinion in April of 99, right in the middle of that window, saying that she can't work because of extreme or severe fatigue. Now, if she has severe fatigue and she never complained about it to Dr. Cuomo before, how is he able to make that opinion? It doesn't seem to be based on any of her complaints, at least at that point in time. So, I mean, his opinion in April of 99 seems to be prospective. I mean, he hasn't been alerted to fatigue. Although it's a symptom in Sjogren's syndrome, she hasn't alerted him that this is a problem that she has. Was that ever articulated as a basis for rejecting his opinion? Yes, it was. And on pages 22 and 23 of his decision, of her decision, she points out that August of 99 is the first mention of fatigue in the, by claimant to the doctor. We're having a little trouble with our clock. Just pause in place for just a second. Go ahead. I'm sorry. In August of 99 was the first time there was a mention of fatigue by the claimant to the doctor. And as I said, it seems inconsistent that Dr. Cuomo would be able to issue an opinion saying that she can't work because of severe fatigue if he never saw her during that time and she never complained about it at that time. The government offer medical testimony in this proceeding? No, Your Honor. There was just a vocational expert. Not even someone who read the medical records? Well, there were state agency doctors, excuse me, Your Honor, that did review the records. And they gave opinions that were consistent to the medical records at that time. None of them examined? No, none of them did. Okay. Anything further? No, there's nothing further. I just wanted to reiterate that remand for further proceedings is appropriate in this case because there remain unresolved issues, and that's consistent with this Court's holding in Harmon. And thank you. Okay. Any other questions? Thank you very much. Rebuttal, Mr. Caldwell. The argument about the onset date is one that I think I'm hearing for the first time. I don't remember the judge being concerned about the onset date, but I think one thing that's important here, and I did quite a bit of medical research on Sjogren's in my brief and shared that with you, is to understand the nature of that disease. It's chronic. It's incurable. There's virtually nothing you can do to treat it. So when the government relies upon some of these gaps in treatment, which I acknowledge are there, I think the government isn't paying attention to the fact that with Sjogren's, frequent doctor visits aren't going to make a difference in how this lady is feeling. The most he can do is prescribe the medications he prescribed and have her take them on a chronic basis. So unlike some other types of impairments, that really isn't, in my opinion, a legitimate reason for discounting the doctor's opinion. I'm not entirely sure what she was saying. I may have got the hang of the date. She's saying there's this gap of, I think, 16 months, April of 98 and August of 99, and in the middle there, without any apparent basis that I could discern from what she said, the doctor pops up with an opinion with regard to her fatigue that presumably was based on what he learned before and that was a year before and it was not such a diagnosis at that time. Well, the diagnosis, no, I'm not sure I agree from a factual point of view, Judge Clifton. The diagnosis of Sjogren's remained consistent. And one thing I think the government glosses over is the length of time that Dr. Cuomo treated this lady. He treated her before even the disability onset date and before even the diagnosis of Sjogren's came up. So he had a lot of experience with this woman. This wasn't something, the government sort of makes it sound like, oh, well, this just sort of popped up all of a sudden. And that's just not factually supported by the record. I've got six seconds left and I think I'll stop there. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed to the next case on the calendar, which is Saucerman v. Norton. Counsel will come forward, please. Mr. Morgan, I believe you're up.
judges: Hawkins, McKeown, Clifton